**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

FILED

AUG 1 0 2021

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**BARRY F. MESSINGER, Administrator**
**of the Estate of Patrick Joseph Messinger,**

      **Plaintiff,**

v.                                                                **CIVIL ACTION NO. 2:21-cv-19**

**MICHAEL MOORE, et al.,**

      **Defendant.**

### *MEMORANDUM OPINION AND ORDER*

Before the Court are Defendants Jason L. Spivey ("Deputy Spivey") and Kimberly Leazer ("Deputy Leazer") (collectively "Intake Deputies") as well as Defendants Cintron, Edwards, Branham, Coardes, Hersey, Matthews, Michalski, Dawson, Deaver, and Cashwell ("On Duty Guards") Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 25 (Spivey), 44 (Leazer), 125 (Cintron), 40 (Edwards, Braham, Hersey, Matthews, Michalski, Dawson, Deaver, and Cashwell), and 51 (Coardes).

Before the Court are also Defendants Motions to Dismiss, filed by G. McMurrin, F. Goode-Alstork, L. McDaniels, D. Boutte, D. Chapman, P. Bell, Nina Williams, and Correct Care Solutions (collectively "Medical Personnel"), under Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 21 (Goode-Alstork), 58 (McMurrin), 72 (McDaniels), 80 (Boutte), 84 (Chapman), 88 (Bell), 131 (Williams), and 65 (Correct Care Solutions),

Also, before the Court are Defendants Motions to Dismiss, filed by Michael Moore ("Sheriff"), Marvin Waters ("Undersheriff"), Major Keller ("Major"), Captain Ford, Captain Sugg, and Lieutenant G. Everett ("Lieutenant"), (collectively the "Sheriff Leadership"). ECF Nos. 35 (Moore & Waters), 51 (Keller), and 40 (Ford, Sugg, and Everett).

For the sake of judicial economy, the Court will adjudicate all Motions to Dismiss together. The Court finds that a hearing is not necessary. Having reviewed the parties' filings, both matters are ripe for judicial determination.

## I.    FACTUAL AND PROCEDURAL HISTORY

The following facts taken from Plaintiff Barry F. Messinger's Complaint, ECF No. 1, are considered true and cast in the light most favorable to Plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). This case at bar concerns the death of Patrick Joseph Messinger (the "Decedent") which occurred on January 11, 2019 at the Portsmouth City Jail ("the Jail"). Compl. at ¶ 1. On January 8, 2021, the Decedent's father and administrator of his estate, Barry F. Messinger ("Plaintiff"), filed this lawsuit against multiple jail officials and medical staff, asserting claims under 42 U.S.C. § 1983 and for wrongful death. The Complaint names "all defendants in both their individual and their official capacities." Compl. at ¶ 12.

Deputies Leezer, Spivey, Cintron, Edwards, Spivey, Branham, Hersey, Matthews, Michalski, Dawson, Deaver, and Sergeants Cashwell and Coardes were on-duty, and were responsible for the Decedent during his incarceration at the Portsmouth City Jail. Compl. at ¶ 4. Moreover, Gwendolyn McMurrin, LPN, Nina M. Williams, Felicia Goode-Alstork, LPN, Dawn Chapman, LPN, D. Bouette, RN, L. McDaniels, LPN, and Paul Bell, RN were duly appointed and actively employed as nurses, licensed practitioners, and/or trained medical personnel, each acting within the scope of their employment for Correct Care Solutions. Compl. at ¶ 9.

On January 6, 2019, at approximately 8:31 p.m., the Decedent was booked into the Jail by Booking Officer J.L. Spivey and was processed by Intake Deputy K.S. Leezer (collectively referred to as ("Intake Deputies"). Compl. at ¶ 17. During the intake process, the Decedent advised the Intake Deputies that he used at least one gram of heroin per day, three to four doses of Xanax

per day, and drank a 12-pack of alcohol per day. Compl. at ₱ 18. The Decedent also informed the Intake Deputies that he had a history of mental health and withdrawal symptoms, which included sweats, vomiting, diarrhea, chills, anxiousness, and restless legs. Compl. at ₱₱ 18-19. Deputy Leazer noted that the Decedent appeared unusual in both appearance and behavior and that he "seemed overly tired and agitated." Compl. at ¶ 20.

After being processed, the Decedent was screened by Nurse McMurrin, who is a licensed practical nurse. Compl. at ¶ 21. During the screening interview, the Decedent told Nurse McMurrin that he: (1); was prescribed Prozac; (2) had a history of mental health treatment; (3) injected one gram of heroin per day; (4) took several Xanax per day; (5) consumed a 12-pack of beer per day; and (6) had "a history of withdrawal symptoms including sweats, headache, hot/cold, and stomach pain." *Id.* Nurse McMurrin determined that the Decedent needed to be examined by a mental health professional to determine whether the Decedent needed any further course of treatment. Compl. at ¶ 23. Nurse McMurrin recommended that the Decedent be housed in general population. Compl. at ¶ 25. Two days later, Nina Williams, a mental health professional, made a note in the Decedent's file that confirmed "IMHA scheduled." Compl. at ¶ 26.

On January 9, 2019 at approximately 10:00 a.m., Nurse Goode-Alstork saw the Decedent and he requested a bottom bunk bed because his left hand was paralyzed. Compl. at ¶ 28. Nurse Goode-Alstork documented that the Decedent was placed in isolation in the morning hours of January 9, 2019 until he could be seen by a medical doctor. Compl. at ¶¶ 28-29. Nurse Goode-Alstork also documented the following patient problems: "chronic", "psych" and "bipolar disorder." *Id.* Nurse Goode-Alstork also failed to timely communicate the fact that the Decedent was placed in isolation to the Watch Commander or any other jail deputies, leaving the Decedent to his own devices during his withdrawal symptoms. Compl. at ¶ 30. Several hours later, at

3

approximately 2:30 p.m., the Decedent was found hanging from his cell bars. Compl. at ¶ 40. The Decedent died on January 11, 2019 at Sentara Norfolk General Hospital. Compl. at ¶¶ 24, 41. An autopsy revealed that the Decedent's cause of death was suicide by hanging. Compl. at ¶ 42. Critically, Nurse Goode-Alstork documented that she was the one who placed the Decedent in isolation *after* the Decedent was found alone, hanging in his cell by Defendant Edwards. Compl. at ¶ 32.

On January 8, 2021 the Barry Messinger, father of the Decedent and administrator of his decedent's estate, filed the instant twelve-count complaint against Deputies, Sergeants, Lieutenants for the Portsmouth City Jail and the Portsmouth Sheriff's Office as well as various nurses and employees of Correct Care Solutions. Compl. at ¶¶ 1-13. Plaintiff filed suit against Defendants in their individual and official capacities and is seeking five million dollars in compensatory damages and ten million dollars in punitive damages. *Id.* at ¶¶ 12, 153. Count One alleges Wrongful Death by On-Duty Guards' Negligence. *Id.* at ¶¶ 54-62. Count Two alleges Gross Negligence by the on-duty guards. *Id.* at ¶¶ 63-69. Count Three alleges Deliberate Indifference to Serious Medical Need against the on-duty guards in violation of 42 U.S.C. § 1983. *Id.* at ¶¶ 70-76. Count Four alleges Negligence of Sheriff Michael Moore and Colonel Marvin Waters. *Id.* at ¶¶ 77-86. Count Five alleges Gross Negligence against Sherriff Moore and Colonel Waters. *Id.* at ¶¶ 87-92. Count Six alleges a Policy and/or Custom of Deliberate Indifference to Serious Medical Need against Michael Moore and Marvin Waters, in violation of 42 U.S.C. § 1983. *Id.* at ¶¶ 93-111. Count Seven alleges Negligence against the Medical Personnel. *Id.* at ¶¶ 112-121. Count Eight alleges Gross Negligence against the Medical Personnel. *Id.* at ¶¶ 122-127. Count Nine alleges deliberate Indifference to Serious Medical Need against the Medical Personnel, in violation of 42 U.S.C. § 1983. *Id.* at ¶¶ 128-134. Count Ten alleges Negligence against Correct Care

Solution. *Id.* at ¶¶ 135-141. Count Eleven alleges Gross Negligence against Correct Care Solution. *Id.* at ¶¶ 142-147. Count Twelve alleges punitive damages. *Id.* at ¶¶ 148-153.

### A. Procedural History for the On-Duty Guards

On March 4, 2021, Defendant Leazer filed a motion to dismiss Plaintiff's complaint. ECF No. 25 On March 18, 2021, Plaintiff responded in opposition to Leazer's motion to dismiss and, on March 29, 2021, Defendant Leazer replied. ECF Nos. 48, 78. Defendant Leazer also filed a request for a hearing. ECF No. 99.

On March 12, 2021, Defendants Branham, Cashwell, Dawson, Deaver, Edwards, Everett, Captain Ford, Hersey, Matthews, Michalski, and Captain Sugg filed a joint motion to dismiss. ECF No. 40. On March 26, 2021, Plaintiff responded in opposition. ECF No. 76. On March 31, 2021, Defendants Branham, Cashwell, Dawson, Deaver, Edwards, Everett, Captain Ford, Hersey, Matthews, Michalski, and Captain Sugg filed a joint reply. ECF No. 102.

On March 15, 2021, Defendant Spivey filed a motion to dismiss Plaintiff's complaint. ECF No. 44. On March 29, 2021, Plaintiff responded in opposition and, on April 1, 2021, Defendant Spivey replied. ECF Nos. 91, 104.

On March 22, 2021, Defendant Coardes filed a motion to dismiss and request for a hearing. ECF Nos. 51, 53. On April 5, 2021, Plaintiff responded in opposition. ECF No. 106. April 9, 2021, Defendant Coardes filed a reply. ECF No. 111.

On April 29, 2021, Defendant Cintron filed a motion to dismiss and request for hearing. ECF Nos. 125, 127. On May 13, 2021, Plaintiff filed a response in opposition. ECF No. 129. On May 17, 2021, Defendant Cintron filed a reply. ECF No. 130.

**B. Procedural History for Medical Personnel**

On March 3, 2021, Defendant Goode-Alstork filed a motion to dismiss Plaintiff's complaint. ECF No. 21. On March 17, 2021, Plaintiff responded in opposition. ECF No. 46. On March 31, 2021, Defendant Goode-Alstork replied. ECF No. 61.

On March 23, 2021 Defendant McMurrin filed a motion to dismiss Plaintiff's complaint and a request for a hearing. ECF Nos. 58, 97. On April 6, 2021, Plaintiff responded in opposition and, on March 29, 2021, Defendant McMurrin replied. ECF Nos. 107, 112.

On March 24, 2021, Correct Care Solutions filed a motion to dismiss Plaintiff's complaint, a motion to strike Plaintiff's complaint, and a request for a hearing ECF Nos. 65, 67, 95. On April 7, 2021, Plaintiff responded in opposition. ECF No. 109. On April 13, 2021, Defendant Correct Care Solutions replied. ECF No. 117.

On March 25, 2021, L. McDaniels filed a motion to dismiss Plaintiff's complaint and request for a hearing. ECF Nos. 72, 96. On April 7, 2021, Plaintiff responded in opposition. ECF No. 110. On April 13, 2021, Defendant McDaniels replied. ECF No. 116.

On March 29, 2021, D. Boutte filed a motion to dismiss Plaintiff's complaint and request for a hearing. ECF Nos. 80, 92. On April 12, 2021, Plaintiff responded in opposition. ECF No. 114. On April 19, 2021, Defendant Boutte replied. ECF No. 119.

On March 29, 2021, Dawn Chapman filed a motion to dismiss Plaintiff's complaint and request for a hearing. ECF Nos. 84, 94. On April 12, 2021, Plaintiff responded in opposition. ECF No. 115. On April 19, 2021, Defendant Chapman replied. ECF No. 120.

On March 29, 2021, Paul Bell filed a motion to dismiss Plaintiff's complaint and request for a hearing. ECF Nos. 88, 93. On April 12, 2021, Plaintiff responded in opposition. ECF No. 112. On April 19, 2021, Defendant Bell replied. ECF No. 118.

On May 24, 2021, Nina Williams filed a motion to dismiss Plaintiff's complaint. ECF No. 131. On June 7, 2021, Plaintiff responded in opposition, but Williams did not reply. ECF No. 134.

### C. Procedural History for Sheriff Leadership

On March 24, 2021, the Court granted a voluntary dismissal of Defendant Sergeant Armentrout. ECF No. 70.

On March 12, 2021, Defendants Sheriff Michael Moore ("Sheriff") and Undersheriff Marvin Waters ("Undersheriff") filed a joint motion to dismiss Plaintiff's complaint. ECF No. 35. On March 26, 2021, Plaintiff responded in opposition and Defendant Moore replied. ECF Nos. 77, 101.

On March 22, 2021, Major Keller ("Major") filed a motion to dismiss Plaintiff's complaint. ECF No. 51. On April 5, 2021, Plaintiff responded in opposition and Defendant Keller replied. ECF Nos. 106, 111.

On March 12, 2021, Captain Ford, Captain Sugg, and Lieutenant G. Everett ("Lieutenant") filed a joint motion to dismiss Plaintiff's complaint. ECF No. 40. On March 26, 2021, Plaintiff responded in opposition. ECF No. 76. On March 31, 2021, Defendants Everett, Captain Ford, and Captain Sugg filed a joint reply. ECF No. 102.

## II.    LEGAL STANDARD

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. The United States Supreme Court has stated that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Specifically, "[a] claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Moreover, at the motion to dismiss stage, the court is bound to accept all the factual allegations in the complaint as true. *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Assessing the claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.)). In considering a Rule 12(b)(6) motion to dismiss, the Court cannot consider "matters outside the pleadings" without converting the motion to a summary judgment. Fed. R. Civ. P. 12(d). Nonetheless, the Court may still "consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *see also* Fed. R. Civ. P. 10(c).

### B. 42 U.S.C. § 1983

Pursuant to 42 U.S.C. § 1983[1], a plaintiff must establish that the (1) defendants violated a right secured by the Constitution or laws of the United States and (2) acted under color of state law in so doing. *See American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, at 50–52 (1999); *see also, New Burnham Prairie Homes v. Village of Burnham*, 910 F.2d 1474, at 1479 (7th Cir.1990) (citing, *Parratt v. Taylor*, 451 U.S. 527, at 535 (1981), overturned on other grounds); *see*

---

[1] 42 U.S.C.A. § 1983 provides in full:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

*also, Carter v. City of Philadelphia*, 989 F.2d 117, 119 (3d Cir.1993) (quotation omitted) (to establish a section 1983 civil rights claim, a plaintiff "must demonstrate that the conduct complained of was committed by a person acting under state law and 'that the conduct deprived him of rights, privileges or immunities secured by the Constitution'"). If either of these elements is missing, the complaint fails to state a claim for relief under 42 U.S.C. § 1983. Moreover, a complaint that states plausible facts and accepted legal theories under § 1983 may nonetheless be subject to dismissal on initial screening if the defendant is immune from liability.

To satisfy the first prong, Plaintiff, in the case at bar, relies on the Eighth Amendment which prohibits cruel and unusual punishment and protects people who are incarcerated from "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, at 173 (1976). The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates," *Hudson v. Palmer*, 468 U.S. 517, at 526–527 (1984). To state an Eighth Amendment claim arising from inadequate medical care, a prisoner must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, at 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the plaintiff was suffering from a serious medical need and that, subjectively, the defendant knew of and disregarded the risk posed by the serious medical need. *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Accordingly to show a deliberate indifference to a serious medical need, plaintiff must satisfy two elements: (1) the deprivation alleged is objectively, "sufficiently serious;" and (2) a prison official's act or omission must result in the denial of "the minimal civilized measure of

life's necessities." *See Farmer v. Brennan*, 511 U.S. 825, at 834 (1994) (citing first *Wilson v. Seiter*, 501 U.S. 294, at 298 (1991) and then *Rhodes v. Chapman*, 452 U.S. 337, at 347(1981)). Finally, for a claim based on a failure to prevent harm, the inmate must show that he was incarcerated under conditions posing a substantial risk of serious harm. *See Helling v. McKinney*, 509 U.S. 25, at 35 (1993).

Critically, to violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently *culpable* state of mind." *Wilson v. Seiter*, 501 U.S. 294, at 297 (1991) (emphasis added); *see also id.,* at 302–303; *Hudson v. McMillian,* 503 U.S. 1, at 8 (1992). In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety. *Wilson,* 501 U.S., at 302–303; *see also, Helling v. McKinney*, 509 U.S. 25, at 34-35 (1993); *Hudson v. McMillian,* 503 U.S., at 5; *Estelle v. Gamble*, 429 U.S. 97, at 106 (1976). Notably, in *Vinnedge v. Gibbs*, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") explained that "[a] willful denial of medical treatment to a prisoner may rise to the level of cruel and unusual punishment, and thus support a claim cognizable under § 1983." 550 F.2d 926, 928 (4th Cir. 1977).

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate inhumane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; *the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference*.

*Id*. at 837 (emphasis added). Moreover, *Farmer* clarified that "an official's failure to alleviate a significant risk that he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id*. at 838. For an official to have a sufficiently culpable state of mind, thus demonstrating "true subjective

recklessness", he must have "knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). The Supreme Court further clarified that "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence," *Farmer v. Brennan*, 511 U.S. at 842. Critically, however, the Court also clarified that inferences from circumstantial evidence cannot be conclusive. *Id.* at 844. [2]

## III.   DISCUSSION

### A. Federal Question & Supplemental Jurisdiction

As an initial matter, a federal district court has federal question jurisdiction over an action pursuant to 28 U.S.C. §§ 1331, 1343. *See Davis v. Passman*, 442 U.S. 228, at 228 (1979) (recognizing that 28 U.S.C. § 1331(a) "confer[s] original jurisdiction on federal district courts of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000 and arises under the Federal Constitution"); *see also, Bell v. Hood*, 327 U.S. 678, at 681–85 (1946). In claims arising out of federal law, the Court will apply federal law.

Moreover, with respect to claims arising out of state law, a district court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), if the claims are "so related" to the claims invoking federal question jurisdiction-invoking claim "that they form part of the same case or controversy under Article III." *See Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, at 387 (1998) ("supplemental jurisdiction allows federal courts to hear and decide state-law claims along with

---

[2] *See Farmer v. Brennan*, 511 U.S. at 844, where the Court reasoned that:

Because, however, prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment, it remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety. That a trier of fact may infer knowledge from the obvious, in other words, does not mean that it must do so. Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, *or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.* (emphasis added).

federal-law claims when they 'are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy'") (citing to § 1367);  *see also, Hales v. Winn–Dixie Stores, Inc.,* 500 F.2d 836, 848 & n. 12 (4th Cir.1974) (stating that supplemental jurisdiction does not encompass claims when one count is "separately maintainable and determinable without any reference to the facts alleged or contentions stated in or with regard to the other count"); *United Mine Workers of America v. Gibbs,* 383 U.S. 715, at 725 (1966) (explaining that federal courts may exercise supplemental jurisdiction over additional state claims if they arose out of "a common nucleus of operative fact" and setting out the constitutional limits of federal supplemental jurisdiction).[3]

In claims arising out of supplemental jurisdiction, district courts apply federal procedural law and state substantive law. *See Gasperini v. Ctr. For Humanities, Inc.,* 518 U.S. 415, at 427 (1996); *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, at 92 (1938) (Reed, J., concurring in part) ("[N]o one doubts federal power over procedure."); *Guaranty Trust Co. v. York,* 326 U.S. 99, at 109 (1945) ("when a federal court exercises diversity or pendent jurisdiction over state-law claims, the outcome of the litigation should be the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court"); *see also, Mason and Dixon Intermodal, Inc. v. Lapmaster Intern. LLC,* 632 F.3d 1056, at 1060 (9th Cir. 2011) ("When a district court sits in diversity, or hears claims based on supplemental jurisdiction, the court applies state substantive

---

[3]Pursuant to 28 U.S.C.A. § 1367(c), the Court may decline to exercise supplemental jurisdiction over a claim if:
(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction
Fn. 1 continued: Generally, however, state tort claims are not considered novel or complex. *See, e.g., Parker v. Scrap Metal Processors, Inc.,* 468 F.3d 733, 743 (11th Cir. 2006); *INX Intern. Ink Co. v. Delphi Energy & Engine Management Systems,* 943 F.Supp. 993, 997 (E.D. Wis. 1996) (holding that negligence, nuisance, and property damage claims have been held as not raising novel or complex issues of state law).

law to the state law claims"); *Barton v. Clancy*, 632 F.3d 9, at 17 (1st Cir. 2011) ("A federal court exercising supplemental jurisdiction must apply state substantive law to the claim").

Critically, however, as detailed below, the Court lacks federal question jurisdiction in this matter because Plaintiff has failed to plead sufficient facts that, even if proven true, do not state a plausible federal claim under 42 U.S.C. § 1983. Therefore, the Court lacks supplemental jurisdiction to hear the remaining state claims.

## B. Count III: On-Duty Guards Alleged § 1983 Violations

Count Three alleges Deliberate Indifference to Serious Medical Need against the On-Duty Guards in violation of 42 U.S.C. § 1983. ECF No. 1 at ¶¶ 70-76.

### 1. Violation of a right secured by the Constitution

As noted above, there are two key elements to state a claim for a violation of the Eighth Amendment in the case at bar. First, Plaintiff must plead that the deprivation alleged is objectively, "sufficiently serious." *See Farmer*, 511 U.S. at 834 (1994). Second, Plaintiff must allege sufficient facts to plausibly find that a prison official's act or omission resulted in the denial of "the minimal civilized measure of life's necessities." *See Helling*, 509 U.S. at 35 (1993).

Here, Plaintiff alleges that "the symptoms of the serious medical need were documented by Defendants Leazer and McMurrin on intake and were therefore known to employees of the Sheriff's Office and employees of Correct Care Solutions." Compl. at ¶ 72. Plaintiff further alleges that although it was determined that the Decedent "needed to be seen and examined by a mental health professional to determine whether the Decedent needed any further course of treatment to address his then-existing mental and physical condition," he never received these services. Compl. at ¶¶ 23-24. Moreover, Plaintiff alleges that although the Decedent was seen by Nina Williams, who is believed to be a Mental Health Professional, "[a]t no time did Williams assess whether the

Decedent needed immediate mental health treatment." Compl. at ¶¶ 26-27. Then, the Decedent was seen by Nurse Goode-Alstork who determined that the Decedent be placed in isolation. Compl. at ¶¶ 28-29. Critically, Nurse Goode-Alstork "failed to timely communicate the fact that the Decedent was placed in isolation to the Watch Commander or any other jail deputies, leaving the Decedent to his own devices at a time when his withdrawal symptoms and his quickly deteriorating physical and mental health significantly caused the Decedent to act to end his life in his isolated state." Compl. at ¶ 30. Further, Plaintiff alleges that "the fact that the Decedent was placed in isolation was not reported to and/or reviewed by the Watch Commander, Defendant Cashwell, until after the Decedent was found hanging in his cell." Compl. at ¶ 31.

Overall, in support of the two requisite elements Plaintiff alleges that:

> [d]espite being in custody for 3 full days, with full knowledge of the Decedent's history of mental illness, added with the knowledge of the fact that the Decedent was going to be suffering from withdrawal symptoms when he began to detox from his ingestion of alcohol and drugs, the Decedent was never seen by a mental health professional ordered by Nurse McMurrin while in the custody of the jail, and the defendants placed the Decedent in an isolation cell, without any monitoring, evaluation, or treatment, where he remained in his depressed mental state and physically isolated until he attempted suicide.

Compl. at ¶ 34. While Plaintiff did allege sufficient facts to establish that the Decedent suffered from withdrawal symptoms and had a history of mental health issues, the Court finds that Plaintiff has not pleaded sufficient facts, that if proven true, plausibly establish that the Decedent suffered from a medical condition of suicide ideation or self-harm that was objectively "sufficiently serious" and that required immediate medical attention. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008); *Coppage,* 906 F.Supp. at 1037 (a "serious" medical condition is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention or if denial of or a delay in treatment causes the inmate to suffer a life-long handicap or permanent loss"). Even when viewed

most favorably to the Plaintiff, the facts alleged do not establish that at any time the Decedent indicated to the Intake Deputies, On-Duty Guards, or the medical personnel that he was at risk for suicide or self-harm. Therefore, there was no objective serious risk that the Defendants were aware of and would be responsible for addressing.

Moreover, even if the alleged facts did show that the Decedent suffered from a serious need specifically related to self-harm or suicide, Plaintiff did not plausibly establish that the actions, or failure to act, of the Defendant On-Duty Guards amounted to deliberate indifference to a serious medical need. That is, the facts alleged are not sufficient to support a plausible finding that the Defendant On-Duty Guards *did not* provide "the minimal civilized measure of life's necessities" to address Decedent's withdrawal symptoms *See Estelle v. Gamble*, 429 U.S. 97, at 106, (1976).

At best, Plaintiff alleges that the On-Duty Guards breached their standard of care, and were grossly negligent, when they:

      a. Negligently placed the Decedent in isolation without notifying the deputies responsible for monitoring the Decedent's well-being and without notifying jail supervisors;
      b. [] failed to appropriately monitor the Decedent while he was housed in isolation;
      c. [] failed to walk the post for at least 40 minutes in violation of jail standards and the General Post Orders Procedure in the Portsmouth Jail's Policies and Provisions;
      d. [] failed to provide the Decedent with the appropriate mental health evaluation(s) and treatment as indicated by his appearance and documented history of drug use, alcohol use, prescribed mental health medication, and history of mental health treatment;
      e. [] failed to provide the Decedent proper medical evaluation(s) and treatment for his obvious drug and alcohol withdrawal symptoms;
      f. [] failed to provide the Decedent with necessary medications;
      g. [] failed to take all reasonable and necessary steps to prevent the Decedent's death;
      h. [] failed to house the Decedent in a proper cell for close monitoring and failed to ensure the Decedent did not have access to items which allowed him to take his life, as required by jail standards and the Portsmouth City Jail Policies and Procedures.

Compl. at ¶ 58.

Although Plaintiff alleges that the Medical Personnel and On-Duty Guards were negligent in providing medical attention, "[m]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citation omitted).

At the same time, Plaintiff's complaint does allege facts to plausibly infer that the Intake Deputies responded "reasonably to the risk, even if the harm ultimately was not averted." *See Farmer*, 511 U.S. at 844. That is, Plaintiff alleges that after he was seen by the Intake Deputies the Decedent was provided medically screened by Nurse McMurrin and later by Nina Williams, who scheduled an independent mental health advocate ("IMHA"). Compl. at ¶¶ 23, 26. Plaintiff also alleges that the Decedent was evaluated by Nurse Goode-Alstork, who made the decision to place the Decedent in isolation until the Decedent could be seen by a medical doctor. Compl. at ¶ 28. Although, the Plaintiff also alleges that Nurse McMurrin and Nina Williams failed to: (1) ensure that the Decedent was actually evaluated by a mental health professional; and (2) provide the Decedent his prescription for Prozac, these allegations do not implicate the On-Duty Guards. *See* Compl. at ¶¶ 26-27. Overall, there is no allegations that the Intake Deputies or the On-Duty Guards withheld medical treatment. Instead, the Complaint establishes that the Decedent was treated by the medical staff and that the Intake Deputies directed them to do so. While the Plaintiff may disagree with the medical staff's treatment, these allegations do not rise to the level of deliberate indifference to medical need to state a constitutional claim against the Intake Deputies and the On-Duty Guards. *See Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) ("[d]eliberate indifference is more than mere negligence, but less than acts or omissions [done] for the very

purpose of causing harm or with knowledge that harm will result") (citation omitted); *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir. 1977) (holding that "[a] willful denial of medical treatment to a prisoner may rise to the level of cruel and unusual punishment, and thus support a claim cognizable under § 1983"); *see also, Helling v. McKinney,* 509 U.S. 25, at 34-35 (1993); *Hudson v. McMillian,* 503 U.S., at 5; *Estelle v. Gamble*, 429 U.S. 97, at 106 (1976).

Critically, Plaintiff fails to plead sufficient facts to establish a sufficiently culpable state of mind that demonstrate "true subjective recklessness." *See Jackson v. Lightsey*, 775 F.3d 170, at 178 (4th Cir. 2014) (holding "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety") (*quoting Farmer v. Brennan*, 511 U.S. 825, at 837 (1994)). That is, Plaintiff must sufficiently allege (1) that the On-Duty Guards knew of the Decedent's risk of suicide or self-harm and (2) that they deliberately failed to remedy this risk and, thus, their conduct was "inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). Here, Plaintiff fails to satisfy both factual elements. "[I]t is not enough that an official should have known of a risk; he or she must have had *actual subjective knowledge* of both the inmate's serious medical condition and *the excessive risk posed by the official's action or inaction*." *See Jackson*, 775 F.3d at 178 (emphasis added).

To attempt to establish the On-Duty Guard's culpable state of mind, or subjective recklessness, Plaintiff, at best, makes conclusory statements. For example, Plaintiff alleges that the On-Duty Guards *knew* that the Decedent had an obvious serious medical need because it was "observed and documented by Defendants Leazer and McMurrin." Compl. at ⁋ 72. However, Plaintiff does not allege that the Decedent informed the Intake Deputies or any On-Duty Guards that he was depressed, suicidal, or had a history of suicidal ideation or attempts. Moreover, Plaintiff

did not allege facts to establish Defendants Leazer or McMurrin shared the Decedent's medical conditions with each of the On-Duty Guards who are Defendants in this case. At best, Plaintiff makes the conclusory allegation:

> At all relevant times, on-duty guards *should have known* that the Decedent was at risk of suicide because of his known extensive drug history, withdrawal history, history of mental health treatment, known prescriptions for mental health medication, documented demeanor on intake and during health evaluations, and placement in isolation, and should have taken steps to ensure proper evaluation and monitoring of the Decedent.

Compl. at ⁋ 57 (emphasis added). While the Decedent did share his previous history of mental health treatment as well as his drug and withdrawal history, Plaintiff does not allege facts to plausibly establish that the Defendants knew that decedent was suicidal or a threat to himself *and* that the Guards acted indifferently.[4] In support of the claim that the On-Duty Guards *should have known,* Plaintiff alleges that "Defendants Leazer, Spivey, Cintron, Edwards, Branham, Coardes, Hersey, Matthews, Michalski, Dawson, Deaver, and Cashwell were on-duty and tasked with maintaining the health and welfare of the inmates in custody of the Portsmouth City Jail." Compl. at ⁋ 37. Furthermore, Plaintiff alleges that "Deputy Cintron and Deputy Edwards, were tasked with performing rounds to check the health and safety of inmates in the Decedent's area of the jail on the day the Decedent was placed in isolation, as required by the written jail policies and procedures." Compl. at ⁋ 38.

---

[4] As sister jurisdictions have held, if prison officials lack the specific knowledge that an inmate is a suicidal risk based on their history of self-harm, then the prison official lacks specific knowledge of such a risk. *See Williams v. Borough of West Chester*, 891 F.2d 458, 465-66 (3d Cir. 1989) (jail officials who had no knowledge of detainee's suicidal tendencies not liable when they failed to remove his belt and he subsequently hanged himself with it); *Danese v. Asman*, 875 F.2d 1239, 1243-44 (6th Cir. 1989) (officials entitled to qualified immunity where no knowledge that intoxicated detainee was seriously contemplating suicide); *Edwards v. Gilbert*, 867 F.2d 1271, 1274-76 (11th Cir. 1989) (officers entitled to qualified immunity for failure to prevent suicide of prisoner where no suicide had been threatened or attempted); *Estate of Cartwright v. City of Concord*, 856 F.2d 1437, 1438 (9th Cir. 1988) (city officials not liable for suicide of pretrial detainee where they had no reason to believe he was suicidal); *Gagne v. City of Galveston*, 805 F.2d 558, 559-60 (5th Cir. 1986) (officers entitled to qualified immunity for suicide of arrestee where they failed to "uncover" his suicidal tendencies).

Then, Plaintiff makes an unwarranted inferential leap from negligence to deliberate indifference by attributing the On-Duty Guards' inactions, or omission, with culpable knowledge:

> The conduct of the on-duty guards, as set out above, *shows their deliberate indifference* to the Decedent's mental and physical health needs, including a failure to evaluate, monitor, and treat the Decedent's serious medical needs, during his confinement. The on-duty guards failed to provide appropriate treatment for the Decedent's withdrawal, and failed to offer basic mental health treatment and monitoring necessary to prevent the Decedent's suicide....

Compl. at ¶ 73 (emphasis added). Accordingly, the Court finds that Plaintiff provided a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements, [which does not] suffice." *Iqbal* 556 U.S. at 678 (2009). The principle that a court must accept as true all the complaint's allegations only applies to factual allegations, but legal conclusions couched as factual allegations need not be accepted as binding. *Id.* Further, a court need not accept "unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014).

Overall, when the facts are viewed most favorably to the Plaintiff, and even if they are accepted as true, the Court finds that Plaintiff has not plead sufficient facts to establish that the On-Duty Guards had a "sufficiently *culpable* state of mind" or subjective recklessness of the Decedent's serious medical need. *Wilson v. Seiter*, 501 U.S. 294, at 297 (1991) (emphasis added). That is, Plaintiff has not plead specific facts to establish which On-Duty Guard had the requisite culpable state of mind. Rather, Plaintiff makes conclusory allegations that all the On-Duty Guards had the requisite culpable state of mind because of the plausibly negligent acts of some of the guards or medical personnel.

2.   Acting Under the Color of Law

Finally, there is no dispute that the On-Duty Guards were acting under the color of law in their official capacities as prison guards.

\*     \*     \*

Therefore, Defendants Intake Deputies and On-Duty Guards' Motion to Dismiss is **GRANTED** and Plaintiff's complaint is **DISMISSED** as to Count III. Accordingly, because the Court lacks supplemental jurisdiction pursuant to 28 U.S.C.A. § 1367(c)(3), Counts I and II are also **DISMISSED.**

### C. Count VI: Michael Moore and Marvin Waters' Alleged § 1983 Violations

Count VI alleges a Policy and/or Custom of Deliberate Indifference to Serious Medical Need against Michael Moore and Marvin Waters, in violation of 42 U.S.C. § 1983. *Id.* at ¶¶ 93-111. Relatedly, Count Four alleges Negligence of Sheriff Michael Moore and Colonel Marvin Waters and Count Five alleges Gross Negligence against Sherriff Moore and Colonel Waters. *Id.* ¶¶ 77-86, ¶¶ 87-92.

1. Legal Standard to Establish Municipal Liability

To establish § 1983 claim based on municipal liability, "a plaintiff must show that [the Sheriff] had an official policy or custom which caused a deprivation of decedent's constitutional or statutory rights." *Brown v. Mitchell,* 327 F. Supp. 2d 615, at 629 (E.D. Va. 2004); *see also, Carter v. Morris,* 164 F.3d 215, 218 (4th Cir.1999) (explaining that only in cases where the municipality causes the deprivation "through an official policy or custom" will liability attach). "It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be aid to represent official policy, inflicts the injury that the government entity is responsible under § 1983." *Monell v. Department of Social Services of New York,* 436 U.S. 658, at 694 (1978).

A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of

a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest [s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, at 471 (4th Cir. 2003) (quoting *Carter*, 164 F.3d at 217); *see also, City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (clarifying that "proof of a single incident of unconstitutional activity is not sufficient to impose liability" against a municipality). Further, municipal liability attaches only for policies or customs that have a "specific deficiency or deficiencies ... such as to make the specific violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run." *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987).

Furthermore, the Fourth Circuit has recognized that "municipal inaction may, in certain circumstances, qualify as an official policy or custom for purposes of" the applicable test provided in *Monell. See Brown*, 327 F. Supp. 2d at 629 (*citing Milligan v. City of Newport News*, 743 F.2d 227, 229–31 (4th Cir. 1984). In these situations, municipal inaction will constitute a custom or policy: "(1) when the city fails to act despite a known pattern of constitutional deprivations; or (2) when the city fails to remedy a situation that, unaddressed, is patently likely to cause constitutional deprivations to an identifiable group of persons who stand in a special relationship to the city." *Brown*, 327 F. Supp. 2d at 629 n.29 (*citing Milligan*, 743 F.2d at 229–30) (internal citation omitted). Municipal liability, however, may not be rested simply upon a failure to adopt policies that, in retrospect, can be seen to be a means by which a particular constitutional or statutory deprivation might have been averted. *Id.*

2. <u>Facts Alleged in the Complaint</u>

Plaintiff alleges that Defendants Moore and Waters have failed to act despite knowing the history of unconstitutional practices or customs of deliberate indifference to inmates' medical needs at Portsmouth City Jail. Specifically, Plaintiff alleges that "Sheriff Moore and Colonel Waters *knew, or should have known*, that Correct Care Solutions and the sheriff personnel had a history of failing to uphold minimal constitutional standard of care for inmates housed at the Portsmouth Jail." Compl. at ⁋ 97 (emphasis added).

In support of this conclusory allegation, Plaintiff alleges that

> Defendant Waters admitted to the plaintiff after the Decedent's death *that the jail medical staff and/or jail staff had a history of failing to meet accepted standards*, and subsequently *lying and manipulating surveillance video to cover up their failures*. Defendant Waters also stated that his investigations of past deaths occurring at the Portsmouth City Jail revealed inconsistencies in what Correct Care Staff and/or jail staff said happened versus what the investigation found to have actually happened. In spite of having this information, Moore and Waters allowed the same individuals involved in prior misconduct to commit the same acts and/or omissions in the care and monitoring of the Decedent, directly resulting in the Decedent's attempted suicide and death.

Compl. at ⁋ 98 (emphasis added).

In support of these claims, Plaintiff alleges that "Defendant Waters acknowledged a previous incident, [] in January 2018, in which proper and acceptable standards were not met when Jail and Correct Care staff failed to evaluate and monitor an unknown inmate in the Portsmouth City Jail. This failure subsequently led to the inmate successfully committing suicide…." Compl. at ⁋⁋ 100, 46. Similarly, Plaintiff alleges that Defendant Waters "disclosed an incident, which occurred in August 2016, in which an individual was not monitored and/or treated in accordance with the proper standards, which resulted in the death of another inmate in the Portsmouth Jail." Compl. at ⁋⁋ 101, ⁋ 47. Plaintiff then alleges that "Waters stated that employees in the jail falsified records to cover up the violations by Correct Care and jail employees." *Id.* Furthermore, Plaintiff

alleges that Defendants Moore and Waters "were aware that inmate Pamela Riddick died in the Portsmouth City Jail in August 2017, after being denied the medical care and monitoring necessary to have saved her life." Similarly, Plaintiff alleges that in August 2017 involving Riddick, "[t]he jail and Correct Care staff failed to monitor or provide any medical treatment before the Decedent's death [and that the jail] staff responded by falsifying records to cover up their wrong-doing." Compl. at ¶¶ 102, 48. As a result of Riddick's death, Plaintiff alleges that the "[t]he Board of Corrections investigated and confirmed [] that the jail staff and Correct Care employees at the Portsmouth City Jail violated Virginia Administrative Codes and the jail's written policies in the treatment of inmates, which resulted in the death of [] Riddick, and placed the jail on probation for the same." Compl. at ¶¶ 103, 49. Also, Plaintiff alleges that "[o]n July 28, 2016, Kendra Nelson died of fibrinous pericarditis with pericardial effusion at the Portsmouth City Jail. The jail and Correct Care staff ignored Nelson's medical complaints and obvious, serious withdrawal symptoms until Nelson died on the jail floor." Compl. at ¶¶ 105, 51.

Finally, Plaintiff alleges that Defendants Moore and Waters "were aware of [four] prior instances of Correct Care Solutions violating the rights of inmates in jails in Virginia." Compl. at ¶ 53 (including incidents in 2008, 2014, and 2015); *see also,* Compl. at ¶ 109 (alleging that Defendants Moore and Wates "were aware of the alarming number of constitutional statutory and policy violations of the sheriff's office personnel and employees of its agent contractor Correct Care Solutions, and despite this knowledge…").

In all, Plaintiff alleges that Defendants Moore and Waters were aware of the aforementioned violations by the Sheriff deputies and Correct Care Solutions but that they "were not adequately addressed…given that the same employees still worked at the jail and the unconstitutional practices continued up to the time of the Decedent's death." Compl. at ¶ 104. As

a result, Plaintiff conclusively alleges that the aforementioned examples, *see* Compl. at ¶¶ 100-109, 53, show that Defendants Moore and Waters knew of and support:

> [A] policy, pattern, and practices of the sheriff office, its personnel and its agents, to include Defendant Correct Care Solutions and its employees, evidencing negligence and a gross disregard for the inmates care, needs, and maintenance for which they were jointly and severally responsible, including their failure to provide appropriate treatment and monitoring for inmates suffering from withdrawal, a failure to provide adequate medications needed by inmates, and a practice of falsifying records in an attempt to hide their failure....

Compl. at ¶ 106. Furthermore, Plaintiff alleges that Defendants Moore and Waters not only knew, or should have known, about these past violations but that "they had the ability to prevent the actions described herein and, should have done so by exercising reasonable diligence and oversight but intentionally, knowingly, and recklessly failed and/or refused to do so, resulting in the inmate's death." Compl. at ¶¶ 107-109.

### 3. Insufficient Facts to State a Claim

In this case, Plaintiff basis for municipal liability is that Defendants Moore and Waters were aware that Correct Care Solutions and the sheriff personnel had a history of failing to uphold minimal constitutional standards of care at Portsmouth City Jail in *four* instances: (1) July 2016, *see* Compl. at ¶¶ 105, 51; (2) August 2016, *see* Compl. at ¶¶ 101, ¶ 47; (3) August 2017, *see* Compl. at ¶¶ 102, 48; and (4) January 2018, *see* Compl. at ¶¶ 100, 46. Furthermore, Plaintiff alleges that Defendants Moore and Waters were aware of another *four* instances of Correct Care Solutions violating the rights of inmates in Norfolk City Jail, Alexandria City Adult Detention Center, Richmond City Justice Center, and Riverside Regional Jail. Compl. at ¶ 53 (including incidents in 2008, 2014, and 2015); *see also,* Compl. at ¶ 109.

The Court finds that even these facts were proven to be true, they are not, at this stage, sufficient to establish a practice that is so "persistent and widespread" as to constitute a "custom

or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). Primarily, Plaintiff has not established a common causal link between the disparate incidents that demonstrates that they stem from the same widespread policy, practice, and/or custom. Furthermore, Plaintiff has not established that Sheriff Moore and Col. Waters have failed to remedy any custom, practice, or policy which has occurred under their leadership. Notably, Sheriff Moore was inaugurated as the Sheriff for the City of Portsmouth in January 2018. Similarly, Col. Waters was subsequently appointed as Undersheriff by Sheriff Moore in January 2018. Thus, the only plausible incident that could evidence a practice that is so "persistent and widespread" as to constitute a "custom or usage," under the leadership of Defendants Moore and Waters, is the January 2018 incident. *See* Compl. at ¶¶ 100, 46 (alleging the Defendant Waters acknowledge that "proper and acceptable standards were not met when Jail and Correct Care staff failed to evaluate and monitor an unknown inmate in the Portsmouth City Jail. This failure subsequently led to the inmate successfully committing suicide as happened in the subject case"). While Plaintiff alleges that the facts of January 2018 are like the facts of the case at bar because both involve an inmate committing suicide, Plaintiff has not provided any facts to allow the Court to make such a determination. *See Id.*

As noted above, establishing ¶ 1983 claim under municipal liability is a high bar. Critically, municipal liability arises "only where the constitutionally offensive actions of employees are taken *in furtherance of some municipal policy or custom*." *Walker v. Prince George's Cty., Md.*, 575 F.3d 426, 431 (4th Cir. 2009) (internal quotation marks and citations omitted). That is, a plaintiff is required to plead sufficient facts to establish, with precision, that there is a widespread and consistent custom, practice, and/or policy that violates a plaintiff's constitutional rights. The Fourth Circuit has reaffirmed the high bar for pleading ¶ 1983 claims in the following manner:

Section 1983 does not grant courts a roving commission to root out and correct whatever municipal transgressions they might discover—our role is to decide concrete cases. *Unfocused evidence of unrelated constitutional violations is simply not relevant* to the question of whether a municipal decisionmaker caused the violation of the specific federal rights of the plaintiff before the court. *Permitting plaintiffs to splatter-paint a picture of scattered violations also squanders scarce judicial and municipal time and resources.* As a practical matter, a case involving inquiries into various loosely related incidents can be an unruly one to try.

*Carter v. Morris*, 164 F.3d 215, 218–19 (4th Cir. 1999). Overall, while the Court is troubled by the aforementioned incidents which resulted in death of multiple people at various jails across Virginia, particularly at the Portsmouth City Jail, the Court must tether its oversight to sufficient facts pleaded with precision and substance in order to permit a viable ¶ 1983 claim under municipal liability theory to proceed. Accordingly, the Court finds that Plaintiff has not plead sufficient facts to state a claim as to Count VI.

4. Remaining Defendants: Keller, Ford, Sugg, and Everett

Furthermore, Plaintiff has not plead any specific facts alleging violations committed by Defendants Keller, Ford, Sugg, and Everett.[5] Thus, Plaintiff has failed to state any claim against any of them. *See e.g., Crouch v. City of Hyattsville, Md.*, No. 09–CV–2544, 2010 WL 4868100, at *6 (D.Md. Nov. 23, 2010) ("A plaintiff does not satisfy [Federal Rule of Civil Procedure 8] when the complaint lump[s] all the defendants together and fail[s] to distinguish their conduct because such allegations fail to give adequate notice to the defendants as to what they did wrong." (second and third alterations in original) (quoting *Classen Immunotherapies, Inc. v. Biogen IDEC*, 381 F.Supp.2d 452, 455 (D.Md.2005)) (internal quotation marks omitted)); *see also, Fox v. City of*

---

[5] Plaintiff's only allegation specific to Defendants Keller, Ford, Sugg, and Everett is the following:

Upon information and belief, the following Major, Captains, Lieutenants, and Sergeant were employed by the sheriff, were on-duty during the Decedent's incarceration, and were responsible for the supervision of jail and ensuring that the Decedent received the constitutional mandated medical care and monitoring, to include but not limited to, Major Keller, Captain Ford, Captain Sugg, Lt. G. Everett, and Sgt. Armentrout. Compl. at ¶ 5.

*Greensboro*, 807 F. Supp. 2d 476, 493 (M.D.N.C. 2011); *Kuehl v. F.D.I.C.*, 8 F.3d 905, 908 (1st Cir.1993) ("A district court has the power to dismiss a complaint when a plaintiff fails to comply with the Federal Rules of Civil Procedure, including Rule 8(a)(2)'s 'short and plain statement' requirement").

*    *    *

Therefore, Defendants Motion to Dismiss is **GRANTED** as to this ground and Plaintiff's complaint is **DISMISSED** as to Count VI. because the Court lacks supplemental jurisdiction pursuant to 28 U.S.C.A. § 1367(c)(3), Counts IV and V are also **DISMISSED**.

### D. Count IX: Medical Personnel's Alleged § 1983 Violations

Count Nine alleges deliberate Indifference to Serious Medical Need against the Medical Personnel, in violation of 42 U.S.C. § 1983. ECF No. 1 at ¶¶ 128-134. Accordingly, the Medical Personnel moves to dismiss. *See* ECF Nos. 58 (McMurrin), 21 (Goode-Alstork), 72 (McDaniels), 80 (Boutte), 84 (Chapman), 88 (Bell), Williams (131), and Correct Care Solutions (65).

1. No Serious Medical Need of Risk of Suicide

As an initial matter, and as noted above in Discussion Section III.B, the Court finds that there are insufficient facts alleged in the Complaint to support Plaintiff's claim that the Decedent objectively had a "serious medical condition" which caused him to commit suicide. That is, while the facts alleged support the claim that the Decedent had a previous history of mental health treatment as well as was experiencing drug and withdrawal history, there are no facts alleged that plausibly establish that the Medical Personnel *knew* that the Decedent was at an immediate risk of suicidal ideation or attempt. For example, Plaintiff alleges that:

> During the intake process, the Decedent advised Deputy Leazer and Deputy Spivey that he used at least one gram of heroin per day and 3 to 4 doses of Xanax per day. In addition, the Decedent told the deputies that he drank a 12-pack of alcohol per day, further acknowledging that he had a history of withdrawal with demonstrable

symptoms when he stopped using alcohol and drugs. The Decedent stated that his withdrawal symptoms included sweats, vomiting, diarrhea, chills, anxiousness, and restless legs.

Compl. at ⁋ 18. Furthermore, Plaintiff alleges that "at approximately 10:14 p.m. on January

6, 2019, Gwendolyn McMurrin, LPN, completed receiving screening interview of the

Decedent...." Compl. at ⁋ 21. Plaintiff alleges that during the intake interview:

> the Decedent told McMurrin that he was prescribed Prozac and that he had a history of mental health treatment. The Decedent also told McMurrin that he injected one gram of heroin per day, took 3 to 4 Xanax per day, and consumed a 12-pack of beer per day, while again acknowledging a history of withdrawal symptoms including sweats, headache, hot/cold, and stomach pain.

*Id.* Plaintiff further alleges that Nurse McMurrin documented that:

> the Decedent appeared angry, kept his head down during the entire interview, refused to make eye contact, had a flat affect, and appeared slow and lethargic. The Decedent advised McMurrin that he did not feel well that he was sick, that his stomach was killing him, and that he went for a hospital visit that day for nausea and neck pain.

Compl. at ⁋ 22. Finally, Plaintiff alleges that based on the medical interview, Nurse

McMurin determined that "the Decedent needed to be seen and examined by a mental health

professional to determine whether the Decedent needed any further course of treatment to address

his then-existing mental and physical condition." Compl. at ⁋ 23.

Then, two days after the initial medical screen, on January 8, 2019, Nina Williams

evaluated the Decedent and noted that "MHC reviewed MH referral. MHC consulted charge nurse

yesterday and f/up w/HRRJ to determine if IM had an incarceration hx and MH tx w/Prozac. IM

last at HRRJ 8/2015. IMHA scheduled. No other MH tx indicated at this time." Williams' entry

form also included the words "Chronic," "Psych," and "Bipolar disorder, unspecified." Compl. at

⁋ 26.

Therefore, even if these facts are proven true, they do not establish that Nurse McMurrin or Williams knew that the Decedent had a serious medical need of suicide ideation or attempt. At best, the Complaint establishes that the Decedent was experiencing withdrawal symptoms and required appropriate medical attention.

2. <u>Subjective Indifference to Serious Medical Need</u>

Plaintiff also failed to plead sufficient facts that, even if proven true, establish that the Medical Personnel acted with a sufficiently culpable state of mind that demonstrate "true subjective recklessness." *See Jackson v. Lightsey*, 775 F.3d 170, at 178 (4th Cir. 2014).

As noted above in Discussion Section III.B, Plaintiff's complaint alleges that after he was seen by the Intake Deputies, the Decedent was medically screened by Nurse McMurrin and later by Nina Williams, who scheduled an independent mental health advocate ("IMHA"). Compl. at ¶¶ 23, 26. Plaintiff also alleges that the Decedent was evaluated by Nurse Goode-Alstork, who made the decision to place the Decedent in isolation until the Decedent could be seen by a medical doctor. Compl. at ¶ 28. Although, the Plaintiff also alleges that Nurse McMurrin and Nina Williams failed to: (1) ensure that the Decedent was actually evaluated by a mental health professional; and (2) provide the Decedent his prescription for Prozac, these allegations do not rise to the requisite level of culpability to establish a ¶ 1983 claim. *See* Compl. at ¶¶ 26-27. Specifically, since the Medical Personnel did not know about a serious medical need regarding the Decedent's suicide ideation or attempt, or risk of self-harm, they acted proportional to medical need that they did know about: the Decedent's drug withdrawal symptoms. *See Coppage,* 906 F.Supp. at 1038 (holding that there is a "clear distinction between situations in which the physician provides no medical care, which may amount to deliberate indifference, and those in which the physician provides merely substandard care, which amounts at most to negligence").

While the Plaintiff may disagree with the medical staff's treatment, the allegations at bar do not rise to the level of deliberate indifference to medical need to state a constitutional claim against the medical personnel. *See Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) ("[d]eliberate indifference *is more than mere negligence*, but less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result") (emphasis added); *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir. 1977) (holding that "[a] willful denial of medical treatment to a prisoner may rise to the level of cruel and unusual punishment, and thus support a claim cognizable under § 1983").

Overall, even when the facts are viewed most favorably to the Plaintiff, and even if they are accepted as true, the Court finds that Plaintiff has not plead sufficient facts to establish that Defendants McMurrin, Goode-Alstork, and Williams had a "sufficiently *culpable* state of mind" or subjective recklessness of the Decedent's serious medical need. *Wilson v. Seiter*, 501 U.S. 294, at 297 (1991) (emphasis added).

5. No Specific Allegations Against Chapman, Boutte, McDaniels, and Bell

Plaintiff has also not plead sufficient specific facts against Defendants Chapman, Boutte, McDaniels, and Bell. Plaintiff only mentions them twice in the Complaint. First, Plaintiff states that Defendants Chapman, Bouette, McDaniels, and Bell "were duly appointed and actively employed as nurses, licensed practitioners, and/or trained medical personnel, each acting within the scope of their employment, agency, and servitude for Correct Care Solutions." Compl. at ₱ 9. Second, Plaintiff alleges that "[a]t all relevant times, the medical staff personnel, including Nina Williams, Felicia Goode-Alstork, Dawn Chapman, and Paul Bell had a duty of reasonable care in their treatment of the Decedent." Compl. at ₱ 113.

30

With respect to Bell, Plaintiff alleges that, as the Health Services Administrator for the Portsmouth City Jail, he had a duty to supervise medical staff employed in the jail. Compl. at ¶¶ 114, 130. Plaintiff also alleges that Bell had "was the Health Services Administrator during the other instances of Constitutional violations in the Jail…and had knowledge thereof." *Id.* Finally, Plaintiff alleges that Bell and Correct Care Solutions failed "to properly and adequately train its employees to properly treat and monitor inmates in the jail showing signs of serious medical needs and/or creating an environment, through supervisory decisions, in which medical personnel were to ignore the needs of inmates." Compl. at ¶ 131.

Thus, Court finds that Plaintiff has not plead sufficient facts to establish a plausible claim, pursuant to ¶ 1983, against Defendants Chapman, Boutte, McDaniels, and Bell. Notably, Plaintiff has not plead *any* facts to allow the Court to determine what actions Defendants Chapman, Boutte, McDaniels, and Bell took, or did not take, or what they knew on the dates in question.

6. Correct Care Solutions

Finally, Plaintiff alleges that Correct Care Solutions is liable under state law for the acts and omissions of its staff under the theory of *respondeat superior*. Compl. at ¶¶ 11, 135-141. However, as detailed above, since the Court finds that Plaintiff did not plead sufficient facts to establish a ¶ 1983 claim against its employees, the Court does not have jurisdiction to evaluate any state claims against Correct Care Solutions.

\*     \*     \*

Therefore, Defendants Medical Personnel's Motion to Dismiss is **GRANTED** and Plaintiff's complaint is **DISMISSED** as to Count IX.

## IV.    CONCLUSION

Based on the foregoing reasons, the Motions to Dismiss that the Intake Deputies, *see* ECF Nos. 25 (Spivey), 44 (Leazer), and the On-Duty Guards, *see* ECF Nos. 125 (Cintron), 40 (Edwards, Braham, Hersey, Matthews, Michalski, Dawson, Deaver, and Cashwell), 51 (Coardes), filed are **GRANTED**. Accordingly, Count III is **DISMISSED** and Counts I and II are also **DISMISSED**.

Also, the Motions to Dismiss that the Sheriff Leadership, ECF Nos. 35 (Moore & Waters), 51 (Keller), 40 (Ford, Sugg, and Everett), filed are **GRANTED**. Accordingly, Count VI is **DISMISSED** and Counts IV and V are also **DISMISSED**.

Finally, the Motions to Dismiss that the Medical Personnel, ECF Nos. 21 (Goode-Alstork), 58 (McMurrin), 72 (McDaniels), 80 (Boutte), 84 (Chapman), 88 (Bell), 131 (Williams), and 65 (Correct Care Solutions)[6], filed are **GRANTED**. Therefore, Count IX is **DISMISSED**. Further, pursuant to pursuant to 28 U.S.C.A. § 1367(c)(3), the Court declines to consider the state claims in Counts VII, VIII, X, XI, and XII and these claims are also **DISMISSED**.

Accordingly, Plaintiff's complaint is **DISMISSED**.

The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
August /b , 2021

UNITED STATES DISTRICT JUDGE

---

[6] The Motion to Strike by Correct Care Solutions is moot and dismissed. ECF No. 67.